UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PIE DEVELOPMENT, LLC                                         PLAINTIFF

vs.                                                     Civil Action No. __3:19-cv-792-HTW-LRA__

PIE INSURANCE HOLDINGS, INC.; PIE                      DEFENDANTS
INSURANCE SERVICES, INC.; DAX
CRAIG and JOHN SWIGART

## COMPLAINT

The plaintiff, Pie Development, LLC ("Pie Development"), files this complaint against Pie Insurance Holdings, Inc. ("Pie Insurance"), Pie Insurance Services, Inc. ("Pie Services"), Dax Craig and John Swigart.

### Parties

1. Pie Development is a limited liability company. Pie Development's sole member is AmFed Holding Company, LLC ("AmFed Holding"). AmFed Holding's membership is composed of John W. "Billy" Roberts, Greg McLemore and the Builders and Contractors Associations of Mississippi Self Insurer's Fund ("BCAM"). Billy Roberts and Greg McLemore are adult, resident citizens of Mississippi. BCAM is a business trust, and its situs is in Mississippi. None of the trustees or members of BCAM are citizens of Delaware, Washington, D.C. or Colorado.

2. Pie Insurance is a corporation formed under Delaware law, and its principal place of business is located in Washington, D.C.

3. Pie Services is a corporation formed under Delaware law, and its principal place of business is located in Washington, D.C.

4. Dax Craig is an adult resident citizen of Colorado.

- 1 -

5. John Swigart is an adult resident citizen of Washington, D.C.

## Jurisdiction

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

7. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

## Venue

8. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## Facts

### *The creation of Pie Development.*

9. AmFed National Insurance Company ("AmFed"), a wholly-owned subsidiary of AmFed Holding Company, LLC, provides employers with workers compensation insurance.

10. In March 2016, Billy Roberts, President of AmFed, directed Greg McLemore, AmFed's Chief Operating Officer and Executive Vice President, to create Pie Development.

11. On March 9, 2016, AmFed and Valen Technologies, Inc., d/b/a Valen Analytics ("Valen") executed a nondisclosure agreement (the "March 2016 NDA") to protect confidential, proprietary and trade secret information that would be disclosed between the two parties in connection with a potential business relationship.

12. Valen provides consulting services to insurers.

13. On its current website, Valen states it offers "innovative solutions" for insurers "actively looking . . . to utilize modern approaches to pricing [and] risk selection . . . ."

14. On April 1, 2016, a certificate of formation for Pie Development was filed with the Mississippi Secretary of State's office.

15. Also, on April 1, 2016, Pie Development applied for and received a D-U-N-S Number from Dun & Bradstreet.

16. Additionally, on April 1, 2016, Pie Development began the process of obtaining a placeholder "Pie" app from Apple that would ultimately be used for Pie Development's planned Pie application.

17. Pie Development established its email account on April 18, 2016.

18. On May 16, 2016, Apple's iTunes Store approved Pie Development's Pie placeholder app via email sent to Pie Development that contained the following text:

> Dear Pie Development, LLC,
> The following build has completed processing:
> Platform: iOS
> App Name: Pie™
> Build Number: 1
> Version Number: 1.0
> App SKU: PieApp
> App Apple ID: 1111214181
> You can now use this build for TestFlight testing or submit it to the App Store.

### *The May 5, 2016 meeting.*

19. At all times during 2016, Dax Craig was president of and an equity owner in Valen.

20. Mike Richardson is AmFed's Chief Underwriting Officer.

21. Brett Schoyer is currently a Senior Consultant with Gross Consulting, but he was a Valen employee in May 2016.

22. On May 5, 2016, Billy Roberts, Mike Richardson, Brett Schoyer and Dax Craig participated in a breakfast meeting (the "May 5 Meeting") at the Grand Cypress Hotel in Orlando, Florida during the NCCI Annual Insurance Symposium.

23. The purpose of the May 5 Meeting was to discuss two primary services that Valen could potentially provide, Valen's predictive analytic services and consulting services to develop a new business plan that Mr. Roberts called "Pie."

24. As Pie Development's representative, Mr. Roberts told the participants at the May 5 Meeting of a business plan to create an application available on the internet and on smartphones to make purchasing workers' compensation insurance as, in Mr. Roberts' words to the May 5 Meeting participants, "as easy as pie."

25. Mr. Roberts told the May 5 Meeting participants that the application would be named "Pie."

26. Mr. Roberts explained to the May 5 Meeting participants that the concept behind Pie is that an employer seeking to obtain a workers' compensation insurance quote would input into the Pie application minimal information consisting only of a few data points.

27. Mr. Roberts further explained that using that minimal information, the Pie application would access various available data sources and provide a workers' compensation insurance quote to the potential Pie customer.

28. The customer could then purchase workers' compensation coverage through the Pie application.

29. Pie would not require the participation of an insurance agent.

30. Mr. Roberts told the May 5 Meeting participants that he anticipated that it would only take a few minutes from the customer's initiation of the Pie application to the application's generation of a quote for workers' compensation insurance.

31. Pie Development was created to develop and market Pie.

32. Pie Development would do business nationally.

33. Pie Development's business plan for Pie is referred to in the remainder of this complaint as the "Pie Trade Secret."

### *Dax Craig leads the Valen team to help develop Pie.*

34. Valen agreed to provide the predictive analytics services discussed at the May 5 Meeting as well as the consulting services that would help Pie Development create Pie.

35. The Valen services Dax Craig and his Valen team provided in connection with the Pie Trade Secret were provided in Mississippi, where Pie Development is based.

36. Valen performed its predictive analytics services well.

37. Valen did not perform its services related to the Pie Trade Secret satisfactorily.

38. Valen's performance in connection with the Pie Trade Secret was poor and suffered from repeated, unexplained delays.

### *The defendants misappropriate the Pie Trade Secret.*

39. After the May 5 Meeting, Dax Craig communicated to John Swigart the Pie Trade Secret.

40. In January 2017, Dax Craig sold all of his equity interest in Valen.

41. Dax Craig continued his employment with Valen for another year after he sold his equity interest in Valen.

42. On May 1, 2017, John Swigart created Pie Insurance under Delaware law.

43. In October 2017, John Swigart promoted Pie Insurance at a trade show in Las Vegas.

44. Pie Insurance had begun to execute a business plan utilizing methods, techniques, processes and procedures identical to the Pie Trade Secret that the defendants had misappropriated.

45. Billy Roberts first became aware of Pie Insurance's existence due to John Swigart's promotion of Pie Insurance at the October 2017 Las Vegas trade show.

46. On October 24, 2017, John Swigart created Pie Services under Delaware law.

### *The defendants raise capital using the Pie Trade Secret.*

47. On December 7, 2017, John Swigart executed as CEO of Pie Insurance a U.S. Securities and Exchange Commission ("SEC") Form D – Notice of Exempt Offering of Securities that reflected that Pie Insurance had raised $4,331,962 in capital through the sale of equity securities in Pie Insurance.

48. In January 2018, Dax Craig called Billy Roberts and told Mr. Roberts that he was leaving Valen.  He told Mr. Roberts that he was unsure what he planned to do in the future.

49. In June 2019, Valen's services provided in response to Mr. Robert's request at the May 5, 2016 meeting were terminated.

50. On August 9, 2018, John Swigart executed as CEO of Pie Insurance an SEC Form D – Notice of Exempt Offering of Securities that reflected that Pie Insurance had raised $5,048,566 in capital through the sale of equity securities in Pie Insurance.

51. On August 9, 2018, John Swigart executed as CEO of Pie Insurance an SEC Form D – Notice of Exempt Offering of Securities that reflected that Pie Insurance had raised $11,000,314 in capital through the sale of equity securities in Pie Insurance.

52. On March 7, 2019, John Swigart executed as CEO of Pie Insurance an SEC Form D – Notice of Exempt Offering of Securities that reflected that Pie Insurance had raised $44,999,990 in capital through the sale of equity securities in Pie Insurance.

53. Each of the Form D's described in the preceding paragraphs list Dax Craig as a "[r]elated [p]erson[]"

54. The SEC's "Instructions for Submitting a Form D Notice" states that "related persons" include officers and directors of the issuer and any person who functioned "directly or indirectly" as a "promoter of the issuer within the past five years . . . ."

### *The Pie Insurance website.*

55. Pie Insurance's website identifies Dax Craig as Pie Insurance's "Co-Founder and President."

56. Pie Insurance's website identifies John Swigart as Pie Insurance's "Co-Founder and Chief Executive Officer."

57. Pie Insurance's website explains that it sells workers compensation insurance to customers through an internet application without the need for an insurance agent and using only minimal data points.

58. Pie Insurance's website states that a customer can "[g]et an online quote in 3 minutes . . . [and] be covered in as little as a day."

59. Parroting Billy Roberts' words from the May 5 Meeting, Pie Insurance's website states that Pie Insurance is "[m]aking workers comp *as easy as pie* . . . ." (emphasis added).

60. Pie Insurance sells workers' compensation insurance in most states, including Mississippi.

61. Pie Insurance coordinates with Pie Services to execute its business plan to use the Pie Trade Secret for both companies' mutual benefit.

### Claim No. 1: Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

62. Pie Development reasserts the preceding allegations.

63. The Pie Trade Secret was a trade secret because it was Pie Development's business plan and included methods, techniques, processes and procedures specific to that business plan.

64. The Pie Trade Secret had significant value because it was not known or available to anyone else who could use or disclose it for profit.

65. Reasonable measures were taken to keep the Pie Trade Secret confidential.

66. Knowledge of the Pie Trade Secret was limited to a small group of AmFed executives who were aware of the requirement to, and did, keep the project secret.

67. Also, Dax Craig, as an agent of Valen, was subject to the March 2016 NDA.

68. Even if the March 2016 NDA had not been in place at the time of the May 5 Meeting, Dax Craig received the information about Pie Development's Pie Trade Secret under circumstances that gave rise to a duty to maintain the secrecy of the trade secret.

69. Dax Craig willfully and maliciously misappropriated the Pie Trade Secret.

70. Dax Craig both used and disclosed the Pie Trade Secret when he knew he had acquired it under circumstances giving rise to a duty to maintain the secrecy of the Pie Trade Secret.

71. John Swigart willfully and maliciously misappropriated the Pie Trade Secret.

72. John Swigart both used and disclosed the Pie Trade Secret when he knew that his knowledge of the Pie Trade Secret was derived from or through Dax Craig who owed a duty to Pie Development to maintain the secrecy of the Pie Trade Secret and to not use the Pie Trade Secret.

73. Pie Insurance willfully and maliciously misappropriated the Pie Trade Secret.

74. Pie Insurance both used and disclosed the Pie Trade Secret when it knew that its knowledge of the Pie Trade Secret was derived from or through Dax Craig who owed a duty to

Pie Development to maintain the secrecy of the Pie Trade Secret and to not use the Pie Trade Secret.

75. Pie Services willfully and maliciously misappropriated the Pie Trade Secret.

76. Pie Services both used and disclosed the Pie Trade Secret when it knew that its knowledge of the Pie Trade Secret was derived from or through Dax Craig who owed a duty to Pie Development to maintain the secrecy of the Pie Trade Secret and to not use the Pie Trade Secret.

77. The actions of each of the defendants violate the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

78. Pie Development has suffered damages as a result of the defendants' misappropriation of the Pie Trade Secret.

### Claim No. 2: Violation of the Mississippi Uniform Trade Secrets Act, Miss Code Ann. § 75-26-1, *et seq.*

79. Pie Development reasserts the preceding allegations.

80. Dax Craig's actions described in the preceding paragraphs constitute an unlawful misappropriation of the Pie Trade Secret in violation of the Mississippi Uniform Trade Secrets Act, Miss Code Ann. § 75-26-1, *et seq.* ("MUTSA").

81. John Swigart's actions described in the preceding paragraphs constitute an unlawful misappropriation of the Pie Trade Secret in violation of the MUTSA.

82. Pie Insurance's actions described in the preceding paragraphs constitute an unlawful misappropriation of the Pie Trade Secret in violation of the MUTSA.

83. Pie Service's actions described in the preceding paragraphs constitute an unlawful misappropriation of the Pie Trade Secret in violation of the MUTSA.

84. Pie Development has suffered damages as a result of the defendants' misappropriation of the Pie Trade Secret.

### Claim No. 3:  Unlawful Interference with Actual or Prospective Business Relations

85. Pie Development reasserts the preceding allegations.

86. The defendants intentionally misappropriated the Pie Trade Secret.

87. The defendants' actions were calculated to cause damage to Pie Development in its lawful business.

88. The defendants' actions were done with the unlawful purpose of causing Pie Development damage and loss without right or justifiable cause on the part of the defendants.

89. The defendants' actions have unlawfully diverted prospective customers away from Pie Development's business and have caused Pie Development to suffer actual damage and loss.

### Claim No. 4: Unjust Enrichment

90. Pie Development reasserts the preceding allegations.

91. The defendants are in unlawful possession of and are unlawfully using the Pie Trade Secret.

92. The defendants in good conscience and justice should not be allowed to retain or continue to use the Pie Trade Secret.

93. The defendants' enrichment through their misappropriation of the Pie Trade Secret is objectively unjust.

94. Pie Development is entitled to recover from the defendants the reasonable value they have derived and continue to derive from their unlawful possession and use of the Pie Trade Secret.

### Claim No. 5: Civil Conspiracy

95. Pie Development reasserts the preceding allegations.

96. The defendants entered into an agreement to accomplish the unlawful purpose of misappropriating the Pie Trade Secret giving rise to the above-listed claims.

97. The defendants' conspiracy to misappropriate the Pie Trade Secret caused Pie Development to suffer damages.

## Relief Sought

ACCORDINGLY, Pie Development respectfully requests that the Court enter a judgment awarding Pie Development the following relief:

(i) an injunction prohibiting any further use of the Pie Trade Secret by the defendants, until and unless the defendants are given express permission for use of the Pie Trade Secret by Pie Development,

(ii) placing Pie Insurance and Pie Services and all related assets in a constructive trust for Pie Development and transferring to Pie Development all rights, title and interest in Pie Insurance and Pie Services and all related assets pursuant to that constructive trust,

(iii) making all of the defendants' jointly and severally liable for

    a. damages in an amount to be proven at trial, but in no event less than $65,380,832.00,

    b. punitive damages,

    c. attorneys' fees and costs incurred in prosecuting this case,

    d. pre and post-judgment interest and

(iv) all other relief that the Court deems appropriate.

Dated: November 5, 2019.

Respectfully submitted,

PIE DEVELOPMENT, LLC

By: /s/ Brian Kimball
Brian Kimball (Miss. Bar No. 100787)
Barber Boone (Miss. Bar No. 102266)
Haley F. Gregory (Miss. Bar No. 104532)
Anna Little Morris (Miss. Bar No. 105299)
Butler Snow LLP
1020 Highland Colony Parkway, Suite 1400 (39157)
Post Office Box 6010
Ridgeland, Mississippi  39158-6010
(T)     601-948-5711
(F)     601-985-4500
(E)     brian.kimball@butlersnow.com
        barber.boone@butlersnow.com
        haley.gregory@butlersnow.com
        anna.morris@butlersnow.com

50088676.v1